UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

UNITED STATES OF AMERICA

      -v-                                  No.  13CR986-LTS

ZYKIA SPELLER

and

DAMON CHAPPELLE,

         Defendants.

--------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

Defendants Zykia Speller ("Z. Speller")[1] and Damon Chappelle ("Chappelle" and together, "Defendants") have each moved to suppress evidence found as a result of warrantless searches of the vehicles they were driving shortly before their arrests.[2]

The Court has carefully reviewed the submissions of the parties and, for the following reasons, the motions are denied in their entirety.

<u>BACKGROUND</u>

Defendants, along with four non-moving co-defendants, are charged in the above-captioned indictment (the "Indictment") with one count of conspiracy to possess with intent to distribute heroin and cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and one count of conspiracy to interfere with commerce by threats or violence in violation of 18

---

[1]    Another co-defendant, with the same surname, is not a party to this motion practice.

[2]    Chappelle has also moved to compel immediate notice pursuant to Federal Rule of Evidence 404(b), and to dismiss the indictment.  Those motions have been resolved in separate orders.  (<u>See</u> docket entry no. 97 and 10/30/14 docket minute entry.)

U.S.C. § 1951(b)(1) and (b)(3).  Defendants are also charged in the Indictment with one count of possession of a firearm during a crime of violence and drug trafficking offense in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.

The following facts are accepted as true solely for purposes of this motion practice.

Defendants were arrested along with four alleged co-conspirators on November 18, 2013.  Government agents conducted an investigation through which they obtained information from a confidential source that Tyrone Davis ("Davis") was part of a group of people capable of committing armed robberies of drug couriers.  At the direction of the government, the confidential source contacted Davis to discuss the possibility of arranging an armed robbery. Davis was put in touch with a confidential witness ("CW-1").  CW-1 and Davis then spoke by telephone in a conversation that was recorded consensually.  During that conversation, Davis and CW-1 arranged to meet to discuss details of the potential robbery.  Instead, Chappelle called CW-1.  Chappelle stated that he worked with Davis, and that Davis had supplied CW-1's telephone number to him.  Chappelle arranged to meet with CW-1 and other co-conspirators. Chappelle and CW-1 met about three times over the next few weeks, along with some of Chappelle's co-defendants (though not Z. Speller).

Chappelle and his co-conspirators scheduled the robbery to occur on November 18, 2013; on that day he spoke to CW-1 and arranged to meet in a parking lot in Manhattan shortly before the planned robbery.  The government agents were able to track Defendants as they traveled from Philadelphia to New York City using a GPS tracking warrant, and the agents surveilled Defendants at certain points during the drive.  Defendants, along with their co-conspirators, arrived at the meeting location, a parking lot, in three cars.  Chappelle arrived alone

in a white Ford Taurus, and Z. Speller arrived in a silver Honda Odyssey along with a co-defendant, Charles Bonner ("Bonner").  Z. Speller did not own the Odyssey, but had permission to use the vehicle on the day of her arrest.  Z. Speller parked her vehicle on the street, down the block from the meeting location.  Chappelle, Bonner, and a co-conspirator met with CW-1 at the meeting location and confirmed the details of the planned robbery.  Defendants left the meeting location in the same vehicles, and then returned around 8:00 p.m. that evening in those vehicles.  Z. Speller again parked her vehicle on the street, rather than entering the parking lot.  Chappelle and two co-conspirators met again with CW-1.  The group discussed using handcuffs and restraints to detain the victims of the planned robbery.  The group also confirmed that they would be armed for the robbery.  CW-1 represented that the robbery victims were then traveling to the planned robbery location, and Defendants returned to their respective vehicles.

    Defendants traveled to the robbery location.  Chappelle was now a passenger in a Lincoln pickup truck, which Chappelle had permission to drive, while Bonner and another co-conspirator drove in the Ford Taurus, and Z. Speller drove her Honda Odyssey.  At the planned robbery location, Defendants were apprehended by government agents who placed them under arrest.  Following their arrest, agents searched Defendants' vehicles, looking for the firearms, handcuffs, and restraints that had been discussed with CW-1.  In Z. Speller's vehicle, agents recovered zip ties (plastic restraints) in the trunk, and under them they found a hidden compartment that contained a .40 caliber Smith & Wesson revolver.  Inside a hidden compartment in the glove box of the Lincoln pickup truck, agents recovered a pair of handcuffs and four loaded firearms: a Ruger .9 mm pistol, a Llama .45 caliber pistol, an FNH 5.7 pistol, and a Glock 23 .40 caliber pistol.

Chappelle alleged in his moving papers that the government agents employed some type of technology to "disassemble portions of the vehicle searching for evidence" (docket entry no. 76, at 7), but has since stipulated that the glovebox "trap" was opened by applying current to wires that had been observed while the glovebox was open, requiring no disassembly of the vehicle (docket entry no. 98).

Z. Speller seeks to suppress the zip ties and Smith & Wesson revolver seized from her vehicle, and Chappelle seeks to suppress the four pistols and pair of handcuffs recovered from his vehicle.

<u>DISCUSSION</u>

"On a motion to suppress evidence in a criminal trial, once [the defendant] has established a basis for his motion, the burden rests on the Government to prove, by a preponderance of the evidence, the legality of the actions of its officers." <u>United States v. Peterson</u>, No. 12CR409, 2012 WL 4473298, at *6 (S.D.N.Y. Sept. 28, 2012).

The Fourth Amendment to the Constitution of the United States provides that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  "[B]ecause the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions."  <u>Brigham City, Utah v. Stuart</u>, 547 U.S. 398, 403 (2006).

"Under the 'automobile exception' to the Fourth Amendment warrant requirement, police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime."

United States v. Gaskin, 364 F.3d 438, 456 (2d Cir. 2004).  Moreover, "[e]ven in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception."  United States v. Howard, 489 F.3d 484, 494 (2d Cir. 2007) (quoting California v. Carney, 471 U.S. 386, 391 (1985)).

The determination of probable cause requires "a practical, common-sense decision, whether given all the circumstances . . . there is a fair probability that contraband . . . will be found in a particular place."  United States v. Harwood, 998 F.2d 91, 96 (2d Cir. 1993) (internal quotation marks and citation omitted) or that "[a] person of reasonable caution would be justified in believing that there was at least 'a probability or substantial chance of criminal activity.'"  United States v. Medina, 459 F. App'x 31, 32 (2d Cir. 2012) (quoting Illinois v. Gates, 462 U.S. 213, 244, n. 13 (1983)).  The Supreme Court has cautioned, however, that, "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause."  Ybarra v. Illinois, 444 U.S. 85, 91 (1979) (citing Sibron v. New York, 392 U.S. 40, 62-63 (1968)).

The Search of Z. Speller's Vehicle

Z. Speller argues that the search of her vehicle was "based merely on the fact that [Z. Speller] appeared to be traveling with individuals [that the government agents] were investigating" and therefore the agents lacked probable cause for the search.  (Docket entry no 56, at 5.)  She relies on cases in which law enforcement officers' information indeed was too scanty to demonstrate probable cause.  Thus, in United States v. Hansen, 652 F.2d 1374, 1390 (10th Cir. 1981), the court held that "the only information tending to implicate [a defendant] was the fact that he was traveling with suspected cocaine dealers."  In Hansen, the police only became

suspicious of the defendant's involvement in the drug conspiracy because a hotel clerk indicated that he had checked into a room adjacent to that of another suspected trafficker.  Id. at 1378.  In United States v. Everroad, 704 F.2d 403, 406 (8th Cir. 1983), the court held that the government did not have probable cause to arrest a suspect whom they saw driving through the area of a planned narcotics sale with a co-defendant.  Agents then saw the pair at a hotel within a 30 minute drive of the planned narcotics sale.  Id. at 406.  The agents obtained the name of the defendant only after asking a hotel clerk who had registered the car in which the pair arrived.  Id. at 406.  The court held that this "brief association with a suspected criminal-when there is no other unlawful or suspicious conduct by any party involved-cannot support a finding of probable cause."  Id. at 407.  In United States v. Chadwick, 532 F.2d 773, 784 (1st Cir. 1976), aff'd, 433 U.S. 1 (1977), the court held that the lone fact that the defendant met with suspects and helped to place a footlocker into a rented car was "suspicious but fell somewhat short of being 'sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.'"  Id.  Each of these cases revolved around a single instance of otherwise lawful association of a defendant with a suspected criminal.

By contrast, in the instant case, the agents had much more extensive information indicative of probable cause to believe that Z. Speller's vehicle contained contraband.  The agents had tracked Z. Speller as she traveled from Philadelphia to New York City with four other people in a total of three vehicles.  The agents had evidence that at least some of the people Z. Speller was with were traveling with the intention of meeting CW-1 and then robbing some purported drug couriers.  They tracked Z. Speller as she traveled twice to a meeting location where the planned armed robbery was discussed in some detail by a group that included an individual who had traveled as a passenger in her car, and then she traveled again, with four of

her co-conspirators, to the scene of the planned robbery.  The observations and other information available to law enforcement provided probable cause to believe that Z. Speller was not merely traveling with her co-conspirators, but rather she was acting in concert with them, behavior that could certainly be characterized as driving in tandem.

Z. Speller further argues that her driving in tandem with the others is not sufficient evidence to support probable cause.  Z. Speller argues her behavior is analogous to that in United States v. Espino-Urvan, No. 12CR337-LTS, 2013 WL 2255953 (May 21, 2013), in which this Court held that government agents lacked probable cause to search a vehicle based on the facts that the agents had reason to believe the suspect would be meeting another person and the searched vehicle had driven "several yards" down a street following the suspect's vehicle and did not pass when it had the opportunity.  The searched vehicle had pulled into a gas station while the suspect's vehicle made a U-turn and parked on the other side of the street.  Id. at *3.  The agents in Espino-Urvan had no other information that linked the searched vehicle in any way to the suspect's vehicle, unlike the instant case, where the Government proffers that the agents had tracked Z. Speller's vehicle from Philadelphia, where her co-conspirators originated on their journey, then tracked it twice to the meeting location, and finally to the scene of the planned robbery.  Additionally, the government agents saw that Z. Speller was joined in her vehicle on the ride from Philadelphia to New York City by Bonner, a co-conspirator who had attended meetings with CW-1 during which planning for the robbery was discussed.  Bonner, the Government alleges, also participated in the discussion with CW-1 at the meeting place at 8:00 p.m., shortly before the planned robbery.

It was reasonable to believe, based on these actions and interactions, that Z. Speller was aware of the planned robbery and was taking steps to further the conspiracy.  The

discussions among CW-1 and the defendants, including Bonner, provided probable cause to believe that members of the conspiracy would be carrying firearms and restraints.  Bonner's presence in Z. Speller's car earlier in the day, and Z. Speller's coordinated arrival at the planned meetings and the robbery location, provided probable cause to believe that Z. Speller's vehicle contained contraband that the conspirators intended to use in connection with the robbery.  The search of Z. Speller's vehicle, including the rear area and the trap was thus lawful: "[i]f there is probable cause to believe a vehicle contains evidence of criminal activity," police are authorized to "search any area of the vehicle in which the evidence might be found."  Arizona v. Gant, 556 U.S. 332, 347 (2009) (citing United States v. Ross, 456 U.S. 798, 820-21 (1982)).  This "automobile exception" is rooted in exigency associated with vehicular mobility and the principle that "citizens possess a reduced expectation of privacy in their vehicles."  United States v. Navas, 597 F.3d 492, 497 (2d Cir. 2010) (citing California v. Carney, 471 U.S. 386, 393 (1985)).  The areas searched were ones in which guns and other robbery paraphernalia could reasonably have been expected to be found.

Z. Speller's motion to suppress the evidence seized from her vehicle is, therefore, denied.

The Search of Chappelle's Vehicle

Chappelle does not dispute that there was probable cause for his arrest.  He was involved in several recorded conversations with CW-1, during which the robbery was planned.  On the day of the robbery Chappelle, along with Bonner and another co-conspirator, met in Manhattan with CW-1 to finalize the details of the planned robbery.  Chappelle returned to that same meeting location shortly before the robbery was to take place.  Chappelle then traveled to the location of the planned robbery, where he was arrested.

Chappelle nonetheless argues that the search of his vehicle was improper and overly extensive because 1) the agents lacked an urgent need to search the vehicle without a warrant once Chappelle was secured, and 2) the agents lacked sufficient, specific probable cause to search the hidden compartment in his vehicle.  Both of these claims fail as a matter of law.

Chappelle conflates two exceptions to the Fourth Amendment's warrant requirement, the search incident to arrest and the automobile exceptions, arguing that the officers' authority to search his vehicle extended only to areas that had been within his reach immediately before the arrest, and citing New York v. Belton, 453 U.S. 454, 460 (1981), in which the Supreme Court held that, incident to a lawful custodial arrest, police may "search the passenger compartment of [the arrestee's] automobile" and "also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach."  The Supreme Court premised this holding on the rationale that an arrestee might grasp for a weapon, and thus officer safety requires them to search areas that were within reach in the vehicle, even if the defendant was secured.  Id.

In Arizona v. Gant, 556 U.S. 332, 350 (2009), however, the Supreme Court clarified its holding in Belton concerning the physical scope of a search incident to an arrest and, in addition, made it clear that a warrantless search of any area of a vehicle in which evidence might be found is authorized where there is probable cause to believe that the vehicle "contains evidence of criminal activity."  Gant, 556 U.S. at 346-47.  This rule "allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader."  Id. at 347.  The warrantless search of a mobile vehicle is reasonable when based on probable cause that it contains contraband or evidence of a crime because of the

"diminished expectation of privacy enjoyed" by drivers and passengers in a vehicle, and thus "the existence of an additional exigency . . . that is, the proximity of the drivers and passenger to the vehicles" is irrelevant to the inquiry.  United States v. Howard, 489 F.3d 484, 494 (2d Cir. 2007).

As explained above, the agents had probable cause to believe that the conspirators would be carrying the robbery tools they had discussed with CW-1 – restraints and firearms – as they traveled to the scene of the planned robbery in their vehicles.  The Court therefore finds that the search of Chappelle's vehicle falls within the automobile exception and was lawful.

Chappelle's second argument, which is unsupported by law and the facts, is that the agents lacked sufficient specific probable cause to use "technology" to take apart his vehicle. The parties have stipulated for purposes of this motion practice that the vehicle was not taken apart and that the only "technology" used was a pair of alligator clips employed to apply current to the exposed wires that operated the opening mechanism for the trap.  As to the law, a search of an automobile based on probable cause of the existence of evidence of a crime may encompass "every part of the vehicle . . . that may conceal the object of the search."  United States v. Navas, 597 F.3d 492, 497 (2d Cir. 2010) (probable cause to search vehicle based on automobile exception extends to "every part of the vehicle and its contents [including all containers and packages] that may conceal the object of the search.") (internal quotation marks omitted). Chappelle's argument – that government agents may not search a hidden compartment of a vehicle that might conceal evidence of a crime simply because it is a hidden compartment – borders on the absurd.  A "trap" built to conceal contraband is well within the proper scope of a search for concealed weapons and robbery paraphernalia.

Since the agents had probable cause to believe, based on the recorded conversations, that firearms and restraints might be hidden in Chappelle's vehicle, they could reasonably search any portion of the vehicle capable of concealing such objects.

Chappelle's motion to suppress the evidence seized from his vehicle is, therefore, denied.

CONCLUSION

For the foregoing reasons, Defendants' motions are denied.  The final pretrial conference in this case remains scheduled for January 6, 2015, at 2:15 p.m. in Courtroom 12D.

This Order resolves docket entry numbers 53 and 75.

SO ORDERED.

Dated: New York, New York
       November 24, 2014

                                                    /s/ Laura Taylor Swain
                                              LAURA TAYLOR SWAIN
                                              United States District Judge