UNITED STATES DISTRIC COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | **13-CR-986 (LTS)** |
| - v - | |
| DAMON CHAPPELLE, | |
| Defendant. | |

# SENTENCING MEMORANDUM
# ON BEHALF OF DAMON CHAPPELLE

STEVEN Y. YUROWITZ
NEWMAN & GREENBERG LLP
*Attorneys for Defendant Damon Chappelle*

950 Third Avenue
New York, New York 10022
(212) 308-7900

## PRELIMINARY STATEMENT

This memorandum of law and accompanying exhibits are submitted on behalf of defendant Damon Chappelle ("Damon" or "Mr. Chappelle") to set forth counsel's view of the relevant considerations in support of Mr. Chappelle's request that the Court impose a sentence of time-served.  The foregoing recommendation is justified either because 1) as the defense contends Damon is not a "career offender" and therefore he has already served more than the term suggested by the advisory Guidelines, or 2) even if as the government contends Damon is a career offender, this Court has discretion to grant a downward variance – as it did at Damon's original sentencing proceedings – and impose a non-USSG sentence.  More generally, this sentencing memorandum is submitted to assist the Court in determining the appropriate sentence to impose upon Damon as a result of his plea and conviction to one count of conspiring to commit Hobbs Act robbery, in violation of 18 U.S.C. §1951.

On September 21, 2015, Mr. Chappelle was sentenced by Your Honor to a 180-month term of imprisonment consisting of a 120-month term under Mr. Chappelle's conviction for Hobbs Act robbery conspiracy (Count Two) and a consecutive 60-month mandatory minimum term based on Mr. Chappelle's conviction under 18 U.S.C. now been vacated by the Second Circuit (Exhibit A), and the parties are in agreement that resentencing is necessary and appropriate.

In counsel's view, consideration of all the §3553(a) factors, including Damon's efforts at rehabilitation while in prison, along with the mitigating factors set forth during

his original sentencing proceedings, counsel in favor of a non-guideline sentence substantially below the 15-year sentence originally imposed.

## INTRODUCTION

As Your Honor undoubtedly recalls the gravamen of Mr. Chappelle's offense was his participation in a conspiracy along with others to rob an individual believed to be a narcotics dealer.  Of the six defendants indicted in this matter by August 2020 all of those that pled guilty and received prison sentences will have been released.[1]  And, the last defendant (Zykia Speller) had her case nolled after Mr. Chappelle met with the government and exculpated her.  The substantial disparity between Mr. Chappelle's original sentence and his codefendants was based on the determination that Mr. Chappelle was a "career offender," a designation that the defense contends based on multiple grounds is no longer applicable.

Moreover, even if the defense is wrong and Mr. Chappelle is a career offender, counsel submits that in light of the vacatur of Count Three, the circumstances of the offense and Mr. Chappelle's efforts to better himself, Mr. Chappelle is a good candidate for a downward variance and a sentence of time-served.  Indeed, we believe that Your Honor would have granted an even greater downward variance than she originally did at Mr. Chappelle's sentence, but for an erroneous assumption at his original sentence relating to Mr. Chappelle's criminal history.

---

[1] According to the BOP's website, Tyrone Davis is set to be released on August 3, 2020, Charles Bonner has been released to halfway house, Jamil Speller is set to be released later this week on June 25, 2020 and Raheem Jefferson was released on December 13, 2016.

In sum, we submit that a sentence of time-served (which at the time briefing in this matter concludes equals a sentence of approximately 80 months before any credit for good-time) is appropriate.

## BACKGROUND

Unless otherwise noted the following facts are based on the PSR prepared in connection with Mr. Chappelle's original sentencing.  Damon Chappelle is 45-years-old and the father to a 25-year old daughter (Anijah).  Damon's childhood was less than ideal. Both of his parents were addicted to cocaine.  Then when he was 12-years-old his parents separated.  Damon stayed with his mother who moved to South Carolina.  Unable to acclimate to "country" living and seeking to get away from his mother's drug-addicted lifestyle, at the age of 14, Damon moved back to Philadelphia to live with his grandfather.

Without any real parental supervision, Damon succumbed to the rough and tumble streets of Philadelphia and things went downhill from there.  Caught up with the wrong crowd, Damon developed a drug addiction, and after taking opioids for a gunshot wound he developed an opioid addiction as well.  It is not surprising that at 18, Damon ended up in prison.

In July 2009, Damon was released from prison but he still had not shaken his drug addiction.  As a result, in November 2009, Chappelle began participating in the U.S. Probation Office's Supervision to Aid Re-Entry (STAR) program. The STAR program assists former inmates like Chappelle residing in Philadelphia to return to the community after incarceration. On February 22, 2012, the defendant successfully completed the STAR

program.  During this time he obtained work as a physical trainer at various fitness centers and it appears that he was on the track to recovery.

As luck would have it, Damon was the victim of a hit and run automobile accident during which he broke his pelvis, dislocated his left shoulder and severely injured his left knee.  In conjunction with his treatment, the defendant was again prescribed opioids (Percocet and Vicodin) and due to his injuries was unable to continue work as a personal trainer.

It was these circumstances that swept Damon into the perfect storm.  While down and out of a job and addicted to opioids he received the offer underlying the instant offense to participate in the robbery of a purported drug dealer with an extraordinary payout.  Thus, in or around late October 2013, Damon received a call from a codefendant informing him that he had information on a large shipment of narcotics that would be making its way to New York in the near future.  Damon was told that the payout would be $250,000 and because it was an "inside job," the risk, if any, would be minimal.  Unable to resist, Mr. Chappelle succumbed to the temptation leading to his arrest.

Damon of course recognizes that however bad his circumstances were, it in no way excused his conduct.  These past seven years have provided him with the opportunity to reflect long and hard on the conduct that brought him to his current circumstances and he has come to recognize that actions have real consequences and that regardless of the predicament that he's in, crime is not the answer to life's problems.  In prison, Damon worked hard learning a livelihood that can accommodate his current physical situation.  He hopes to be able to find employment in the food-service industry

having completed an intensive 500-hour culinary arts training program while in prison. Exhibit B.

Moreover, despite his troubled past, Damon has many redeeming qualities. For example, Marguerite Chappelle, Damon's sister who suffers from Multiple Sclerosis writes to the Court to say how Damon used his skills as a personal trainer to help her deal with her illness. She urges the Court to exercise leniency so that he can continue to provide her such aid. Marguerite has informed counsel that her brother's help would be of particular assistance at this time in light of the current Covid-19 pandemic and her wariness of having other people come to her home to assist. Marguerite indicates that Damon also acted as a father figure for her daughter. Exhibit C (Letter of Marguerite Chappelle).

Karen Spriggs, a cousin of Damon's, indicates that Damon is the kind of person "who helps you carry your groceries bags" and "will shovel your sidewalk without" being asked. Similarly, "Damon is the first one outside to help clean up the block. Damon is always willing to help anyone out. Damon takes the time to talk to you. It's not uncommon to find Damon sitting on the steps talking with the children from the neighborhood." Exhibit C (Letter of Karen Spriggs).

Odis J. Gadson III, another one of Damon's cousins, describes Damon's love for drawing and how he seeks to "inspire others as an artist. I remember visiting him and he was trying to teach me how to draw Dr. J of the Philadelphia 76ers." Your Honor will no doubt recall that at his earlier sentencing proceeding counsel provided the Court with Damon's drawing of Your Honor but more importantly, that he had volunteered as an

art instructor while at the MDC, providing training even to one of the correctional officers.  Exhibit D (Transcript of Sentencing) at 18.

Lisa Gadson-Contes, a clinician at University Hospital & Medical Center in Tamarac, Florida, writes how it was Damon that stepped forward to assist a widow in making her rent payment when she was unable to make ends meet as a result of her husband's death.  Ms. Contes write that Damon has a heart "the size of Texas."  We submit that these acts of Damon represent the true essence of who he is.

Finally, as the Court will no doubt recall Damon showed his true inner character in connection with the assistance he provided to co-defendant Zykia Speller.  Zykia Speller was originally charged for her role in driving one of the cars to the planned robbery.  Ms. Speller was an innocent dupe used by the defendants because she was less likely to attract attention.  After Damon pled guilty, and against the advice of his counsel Damon made a complete proffer to the government and exculpated Zykia Speller which resulted in the charges against Ms. Speller being nolled.  A copy of the letter submitted by Ms. Speller's attorney at the original sentencing is attached.

GUIDELINE CALCULATIONS

At his original sentence, the Probation Office calculated Mr. Chappelle's Guideline range as follows:

| | |
|---|---|
| Base offense level (2B3.1) | 20 |
| Taking of drugs as an object | +2 |
| Adjusted offense level | 22 |
| Career offender adjustment | 32 |
| Acceptance of responsibility | -3 |
| Total offense level | 29 |

Although Mr. Chappelle was found to have six criminal history points, because Mr. Chappelle was deemed to be a "career offender" not only was his offense level adjusted upward by 10-levels, his criminal history category was adjusted upward from category III to Category VI.   In other words, as a result of the "career offender" determination Mr. Chappelle's USSG range –– after taking into account the 3-level reduction for acceptance of responsibility –– went from 37-46 months (the range applicable to Level 19 in CHC Category III) to 151-188 months (the range applicable to Level 29 in CHC Category VI).  Moreover, as a result of his 924(c) conviction not only was an additional mandatory 60-month sentence added to these ranges, i.e., a range of 97-106 months had the career offender determination not applied or 211 to 248 months with the career offender designation, but pursuant to USSG §4B1.1(c)(2)(B) and (c)(3), his range was substantially increased even higher to 262 to 327 months.  It was from that range (although possibly higher) that the Court began its sentencing analysis and granted a downward variance to 180 months, a downward variance of at least 32 percent.[2]

The government's position before the Second Circuit (and it is reflected in the updated PSR received by counsel today) is that even after vacatur of Count Three, Damon is still a "career offender" although no longer subject to the enhanced range pursuant to

---

[2] TIt is unclear from the sentencing minutes whether the Court understood that the 262-327 month range already included the 60-month mandatory minimum.  The Court's initial statement appears to make clear that it did.  Exhibit D at 14 ("It takes the bottom of the guidelines under career offender with the follow-on 924(c) extra five years from 211 to 262 months.").  The Court's later statement is ambiguous.  *Id.* at 27 ("the adjusted advisory guideline range for custodial sentence is from 262 to 327 months of imprisonment, with a mandatory minimum term of 60 months corresponding to count 3").  The Court's later written statement of reasons indicates that the sentencing range was 322-387, i.e., the 60-month mandatory minimum was added to the applicable range even though it was already taken into account by the Guidelines.

USSG §4B1.1(c)(2)(B) and (c)(3) – which requires a §924(c) conviction – and simply returned Mr. Chappelle to the range of 151 to 188 months.

In Mr. Chappelle's view, he is no longer a career offender at all.  In Mr. Chappelle's view the following USSG calculation applies:

| | |
|---|---|
| Base offense level (2B3.1) | 20 |
| Because a firearm was possessed | +5[3] |
| Taking of drugs as an object | +2 |
| Adjusted offense level | 27 |
| Acceptance of responsibility | -3 |
| Total offense level | 24 |

The foregoing Guideline calculation produces a USSG range of 63-78 months in criminal history category III.

According to the PSR prepared in connection with his original sentencing, Mr. Chappelle was a "career offender" because:

> As is shown in Part B (Criminal History) below, the defendant has two prior convictions for a crime of violence (Robbery) and controlled substance offense (Possession with Intent to Distribute Crack). Since the instant offense involves a Conspiracy to Commit Hobbs Act Robbery and the defendant was 18 years or older at the time of its commission, he is a career offender within the meaning of §4B1.1 of the guidelines. Accordingly, his offense level is increased to 32, pursuant to §4B1.1(b)(3).

PSR, ¶42.  In other words, if either Chappelle's prior robbery conviction or his present conviction for Hobbs Act robbery conspiracy are not "crimes of violence" within the meaning of the Guidelines, Chappelle's designation as a "career offender" must fall.

**A.  Chappelle's Prior Robbery Conviction is Not a "Crime of Violence."**  One of the two prior convictions previously relied on by the PSR for its "career offender"

---

[3] This enhancement did not apply at Mr. Chappelle's initial sentencing since the enhancement does not apply where the defendant is also convicted of a 924(c) offense.

determination was Mr. Chappelle's prior Pennsylvania state conviction for robbery. While the PSR does not specify pursuant to what statute Mr. Chappelle was convicted, the plea agreement indicates that it was in violation of 18 Pa. Cons. Stat. §3701.

In *United States v. Thorn*, 282 F. Supp.3d 886 (E.D. Pa. 2017), the district court confronted the question whether §3701 was a crime of violence under the Guidelines.[4]  In answering that question, *Thorn* addressed the preliminary question whether §3701 was an indivisible or divisible statute.  Resolution of that preliminary question will determine whether to apply the strict or modified categorical approach.  If a statute is divisible than the modified categorical approach applies and a court is permitted to consult so-called *Shepard* documents in determining whether the crime at issue is a "crime of violence." *Shepard* documents consist of "a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Descamps v. United States,* 570 U.S. 254, 257 (2013).  By contrast, an indivisible statute requires application of a strict categorical approach.

A statute is "indivisible if it sets out a single set of elements to define a single crime." *Mathis,* 136 S.Ct. 2243, 2248-49 (2016).  By contrast, a statute is divisible if it "comprises multiple, alternative versions of the crime." *Descamps v. United States,* 570

---

[4] The first degree robbery offense provides as follows:
  **§ 3701.  Robbery.**
  **(a)  Offense defined.--**
  (1)  A person is guilty of robbery if, in the course of committing a theft, he:
  (i)  inflicts serious bodily injury upon another;
  (ii)  threatens another with or intentionally puts him in fear of immediate serious bodily injury;
  (iii)  commits or threatens immediately to commit any felony of the first or second degree;

U.S. 254 (2013). *Thorn* recognized the difficulty inherent in discerning between a divisible and indivisible statute where a statute such as §3701 uses disjunctive language.

> Pennsylvania's robbery statute provides that a person is guilty of robbery if, "in the course of committing a theft," he "inflicts serious bodily injury upon another" *or* "threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa. Cons. Stat. § 3701(a)(1)(i)-(ii). Does this mean that there are different ways to commit the general crime of robbery, or does the statute actually announce two independent types of robbery?

282 F.Supp.3d at 889.   In determining the divisibility of such a statute the question is whether the alternatives contained in the statute are "elements" in which case the statute is divisible or "means" in which case the statute is indivisible.

In *Mathis,* the Supreme Court proposed various ways for a court to make such a determination.   For example, *Mathis* held that sometimes "a state court decision definitively answers the question" and such an answer will be determinative.  *Mathis*, 136 S.Ct. at 2256.   In *United States v. Singleton*, 252 F. Supp.3d 423, 431 (E.D. Pa. 2017), the district court relied on *Commonwealth v. Payne*, 868 A.2d 1257, 1262 (Pa. Super. Ct. 2005), a first degree robbery prosecution in which jurors were instructed on both subsections (a)(1)(i) and (a)(1)(ii) and the jury returned a general verdict and there was "ambiguity in the jury's verdict" concerning which of the two subsections the jury convicted.  *Payne* "demonstrates that if a robbery is charged under more than one subsection, jurors need not agree on *which* subsection applies -- so long as they agree that at least one does." *Singleton*, 252 F. Supp.3d at 431.

Moreover, *Singleton* found that Pennsylvania's Suggested Standard Jury Instructions requires the jury to find only two "elements": (1) conduct falling into any of subsections (i), (ii), *or* (iii); and (2) that this conduct was done in the course of committing a theft." *Singleton*, 252 F. Supp. 3d at 431 (quoting 2 Pennsylvania Bar Institute, *Pennsylvania's Suggested Standard Criminal Jury Instructions* § 15.3701A (3d ed. 2016)). *Singleton* found that these instructions indicate that consistent with *Payne* "a jury charged on each of subsections (i), (ii), and (iii) need not agree which subsection applies to reach a verdict of guilty." *Id.*

*Singleton* also noted that the legislative history to §3701 is consistent with the conclusion that each subsection does not constitute alternative elements but simply alternative "means" of committing the offense. Thus, the legislative history indicates that in adopting the statute the Pennsylvania legislature indicated that it "adopted almost verbatim" the Model Penal Code's definition of robbery. The Model Penal Code commentary stresses that the definition of the robbery offense "contains the single offense of robbery" whose "elements … focus upon three factors" only one of which is "the nature of the special circumstances that serve to distinguish the offense from ordinary theft" (*i.e.,* subsections (i), (ii), or (iii)). Model Penal Code § 222.1 note (Am. Law Inst. 1962).

In sum, state law decisions and other related authorities are strong support for the proposition that §3701 is not divisible.

*Mathis* found that at times, "the statute on its face may resolve the issue." For example, where "statutory alternatives carry different punishments, then under *Apprendi*

they must be elements." *Thorn* and *Singleton*, found that when it came to the first-degree offense each of the three subsections carried the same penalty, again suggesting that the different subsections were simply different means to commit the offense and not alternative elements.

According to *Mathis,* where state law fails to provide clear answers, a court may "peek at the [record] documents" for "the sole and limited purpose of determining whether [the listed items are] element[s] of the offense."

In *Thorn* and *Singleton,* even after taking a "peek" at the underlying documents, the court concluded that §3701 was indivisible.

Having concluded that §3701 was indivisible, *Thorn* analyzed whether under the categorical approach the statute was a "crime of violence" within the meaning of the statute. *Thorn* concluded that §3701 was not a crime of violence since not every method of committing robbery under §3701 constitutes common-law robbery:

> Both Defendant and the Government agree that generic robbery requires taking "by violence" or putting a victim in fear. Subsection (a)(1)(iii) under Pennsylvania's robbery statute contemplates a scenario where a defendant can rob without using violence or placing a victim in fear. Thus, first-degree robbery is not a "crime of violence" under the enumerated clause.

*Thorn*, 282 F. Supp.3d at 893.

Subsequent to the decision in *Thorn*, the Third Circuit in *United States v. Peppers*, 899 F.3d 211 (3d Cir. 2018), without considering any of the analysis contained in either *Thorn* or *Singleton* held based on a pre-*Mathis* decision that §3701 is divisible. As a result,

*Peppers* applied the modified categorical approach.  This Court is not bound by *Peppers*, and the reasoning of *Thorn* and *Singleton* are persuasive.

Moreover, even *Peppers* ultimately concluded that the defendant's prior conviction was not a crime of violence since no *Shepard* documents existed and without any such documents, "the categorical and modified categorical approaches are the same, and the sentencing court is forced to proceed under the categorical approach."  899 F.3d at 232.  Applying the categorical approach, *Peppers* agreed with the holding in *Thorn* that §3701 was not categorically a crime of violence.

Counsel is not aware of the existence of any *Shepard* documents in this case.  As a result, based on either *Thorn* and *Peppers*, Mr. Chappelle's prior conviction does not qualify as a crime of violence for purposes of his "career offender" determination.

### B.  Chappelle's Hobbs Act Robbery Conspiracy Conviction is not a "Crime of Violence."

Even assuming the existence of *Shepard* documents, and even assuming that those documents establish that Mr. Chappelle's conviction was under a provision of §3701 that categorically constitutes a "crime of violence," Mr. Chappelle would still be ineligible for the designation as a "career offender."

As noted above, for a defendant to qualify as a "career offender," his conviction under the instant offense had to have also been for a "crime of violence."  In reversing Mr. Chappelle's conviction the Second Circuit recognized that a Hobbs Act robbery conspiracy conviction is not a "crime of violence" under the "force clause."  Thus, the only issue is whether robbery conspiracy is a "crime of violence" under the enumerated offense clause.  Plainly, robbery conspiracy is not robbery, a fact made evident by the

13

Second Circuit's vacatur of Mr. Chappelle's 924(c) offense.  Nevertheless, the government argued in the Second Circuit (in its opposition to Mr. Chappelle's bail motion) that under the Guideline commentary (USSG §4B1.2, comment. (n.1)), a conspiracy to commit Hobbs Act robbery is also a "crime of violence."  GO23.

In making this argument, the government ignored the Second Circuit's recent decision in *United States v. Swinton*, 797 Fed.Appx. 589, 602 (2d Cir. 2019).  In *Swinton,* the Second Circuit remanded for resentencing with directions to the district court to consider whether in light of the concerns addressed in *United States v. Winstead*, 890 F.3d 1082 (D.C. Cir. 2018), the career offender Guideline applied to Swinton.  In *Winstead,* the D.C. Circuit determined that defendant received ineffective assistance of counsel when defense counsel failed to challenge a career offender determination premised on a prior conviction for attempted narcotics distribution.  In the view of *Winstead*, application note 1 was invalid under *Stinson v. United States,* 508 U.S. 36 (1993)), inasmuch as it contradicted the plain text of the career offender Guidelines which do not apply to conspiracies.  The holdings of *Swinton* and *Winstead* apply with equal force to Chappelle.

In sum, whether by virtue of *Thorn/Peppers* or *Swinton/Winstead*, this Court should find that Mr. Chappelle is no longer a career offender.

## OTHER SENTENCING ISSUES

Two other issues that arose at the prior sentencing warrant discussion.  Numerous times during the prior sentencing proceedings Your Honor inquired about the details concerning Mr. Chappelle's prior §924(c) conviction. And, although defense counsel insisted that Mr. Chappelle's prior §924(c) conviction had been vacated and that the basis

14

for the vacatur was an issue concerning Chappelle's involvement, the Court in pronouncing sentence specifically referred to Mr. Chappelle's "prior . . . gun-related activity" as justification for its sentence. Exhibit D at 32. The government claimed that it did not have information whether Chappelle's prior §924(c) offense "was vacated and not reinstated" (*id.* at 21) -- a claim that is hard to understand since a simple review of the docket sheet in the prior case would have confirmed that the conviction was vacated and not reinstated. Indeed, had Chappelle's prior §924(c) conviction not been reinstated he would have been subject to a mandatory 25-year sentence in this case (18 U.S.C. §924(c)(1)(C)(i)), and neither the Probation Office nor the government was sought such a sentence.

Similarly, the government's claim (Exhibit D at 21) that Chappelle's sentence was reduced to "95 months" was also not completely accurate. Again, a review of the docket reveals that while Chappelle was initially re-sentenced to 95 months (for his plea to all counts aside from the §924(c) offense), that sentence was ultimately reduced to 24 months. Exhibit G. Mr. Chappelle attempted to raise this issue after his original sentence. Although Your Honor denied the motion based on Mr. Chappelle's pending appeal it noted that only Mr. Chappelle's sentence on some of the counts (the drug counts) were reduced but the sentence on the 922(g) count was not reduced. Doc#222 at 2. The Court's error was understandable since the docket sheet indicated as much. Exhibit F at 8-9. Review of the court's actual order, however, makes clear that the reduction applied to all remaining counts of conviction. Exhibit G. The Court is respectfully requested to consider these clarifying facts in imposing sentence.

The Second Circuit's order also directed that the Court may consider Mr. Chappelle's contention "that there was a discrepancy between the term of supervised release orally imposed by the court in passing the sentence and the term subsequently entered into the written judgment."  Exhibit A at 2.  In Mr. Chappelle's view, the issue has since been mooted since the maximum term of supervised release that can be imposed now in light of the vacatur of Count Three is 3 years.  PSR, ¶91.

## SECTION 3553(a) FACTORS

After *United States v. Booker*, 543 U.S. 220 (2005), the Court's sentencing discretion is guided by the factors set forth in 18 U.S.C. §3553(a), only one of which is the USSG calculation.  Application of all of the §3553(a) factors is governed by the overriding principle that the Court "shall" impose a sentence "sufficient, but not greater than necessary," to comply with the purposes set forth in §3553(a)(2), which includes "just punishment" for the offense.   The §3553(a) factors, including the history and characteristics of the defendant, protection of the public from further crimes by the defendant, and the kinds of sentences available all weigh in favor of leniency for Damon. *See United States v. Arteca*, 411 F.3d 315, 323 (2d Cir. 2005) ("Although the court made a significant downward departure from the applicable Guideline range [at his original sentencing], we cannot say as a matter of law that the same [higher] sentence would have been arrived at had the court regarded the Guidelines as advisory rather than mandatory"); *United States v. Ranum*, 353 F. Supp. 2d 984 (E.D. Wis. 2005).

**Nature and Circumstances of the Offense and the History and Characteristics of the Defendant (§3553(a)(1)).**

No one will argue that Damon's offense (a planned armed robbery) is not serious. The seriousness of the offense, however, is somewhat mitigated by the fact that in reality it was a sting operation. As the Court is aware from prior submissions in this case the charged robbery was a fiction designed by law enforcement to entice individuals (most of whom appear to be of color and limited financial means) to engage in criminal behavior with the promise of exorbitant financial gain. No doubt the government justifies these actions by seeking those that are already predisposed to commit crime and "weeding them out," presumably before they have the opportunity to commit another crime on their own. The government's theory is somewhat debatable. By specifically designing an opportunity that was almost too good to pass up they more likely succeeded in motivating someone like Damon to commit a crime that he may not have otherwise been inclined to commit. This is particularly true in the case of poor individuals whose opportunities may already be limited due to past transgressions and other societal disadvantages. Courts and commentators have continued to question this practice. *See, e.g.,* "More Judges Question Use of Fake Drugs in Sting Cases," The New York Times, November 20, 2014; *United States v. Black*, 733 F.3d 294 (9th Cir. 2013).

Mr. Chappelle does not contend that his conduct is not deserving of punishment. Nevertheless the severity of the punishment he has already received (nearly 7 years) is significant. During this time Mr. Chappelle's father passed away, his mother took ill and his daughter is engaged to be married. The sentence should reflect the reality that the

crime was a trap which even if valid was expressly designed to ensnare easy and vulnerable prey like Mr. Chappelle.

Moreover, the severity of the conduct has to be weighed against the history and characteristics of the defendant.  Damon lacked a family structure and guidance, a circumstance which led to an addiction to narcotics at a very young age that continued up until his arrest for the instant offense.  *United States v. Tann*, 332 Fed. App'x 674, 676, 2009 WL 1605124, at *1 (2d Cir. 2009) (upholding reasonableness of below-Guidelines sentence that took into account "the difficult circumstances relating to [defendant's] upbringing"); see also *United States v. Erskine*, 280 Fed. App'x 16, 19, 2008 WL 2228600 at *2 (2d Cir. 2008) (upholding reasonableness of sentence 30 months below the applicable Guidelines range where sentencing court considered defendant's "difficult childhood").

Damon has made many mistakes in life, however, he appears to have recognized the error of his ways and is making every effort to make things right.

**Traditional Sentencing Goals (§3553(a)(2)).**  Damon's efforts at rehabilitation are an important factor in determining the length of any potential future prison sentence. *Gall v. United States*, 552 U. S. 38, 59 (2007) ("Gall's self-motivated rehabilitation . . . lends strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts").  Damon has worked in obtaining training for a career once he is released and he has also participated in a drug program while in program in order to overcome his prior addiction.

**Kind of Sentences Available (§3553(a)(3))**.  Unlike at his first sentence, the Court is no longer constrained by the need to impose a mandatory five-year consecutive sentence.  The Court can impose a sentence as low as time-served which constitutes a significant sentence (almost 7 years).  A sentence of time served accompanied by a period of supervised release, would recognize Mr. Chappelle's attempt at bettering himself and permit him to return to his family and society more quickly, and allow him to prove to the Court and society that he is firmly committed to doing "the right thing."

**USSG and Departure Grounds (§3553(a)(4) and (5))**.  In *Pepper v. United States*, 131 S. Ct. 1229 (2011), the Supreme Court recognized that:

> when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range.

*Pepper*, 131 S. Ct. at 1236; See also *United States v. Maier*, 975 F.2d 944, 948 (2d Cir. 1992) (a defendant's "awareness of [his] circumstances and the demonstrated willingness to act to achieve rehabilitation, thereby benefiting the individual and society" is a ground for a downward departure).

Here, Damon's conduct while in prison, demonstrates that he has recognized the errors of his past way of life and that he has made real efforts to change himself.  While the revised probation report shows some minor infractions while in prison it makes clear that Mr. Chappelle "has maintained clear conduct since his arrival to the facility" and that his "interaction with staff and inmates is appropriate."  More importantly, none of the infractions involve violence which Mr. Chappelle makes sure to stay far away from.

The Court can take these factors into account, and we respectfully submit that it should do so, and sentence Damon to a non-guideline sentence of time-served.

**Sentencing Disparity (§3553(a)(6)).** Courts have recognized that in considering this factor a district court can consider both disparities between a defendant and his codefendants, as well as similarly situated defendants in other cases. *Compare United States v. Nunez-Gonzalez,* 295 F. App'x 473, 474 (2d Cir. 2008) (remanding to consider whether resentencing was appropriate where it was unclear "whether the District Court fully considered the sizeable disparity between the sentences of defendant and [a] co-defendant . . . who appears to have played a more significant role in the conspiracy but nevertheless received a substantially shorter sentence.") *with Pepper v. United States,* 562 U.S. 576, 131 S.Ct. 1229, 1253 (Sentencing Reform Act of 1984 was "designed to help correct 'disparities' among similar defendants sentenced by different judges.").

Here, whether compared to his co-defendants or other defendants sentenced in similar sting operations conducted by the government, a sentence of time-served is warranted. For example, two of his four co-defendants have been released from prison and the other two will be released either this week or the coming months. A sentence of time served would be consistent with these sentences.

Similarly, in *United States v. Brant*, 13 Cr. 487 (RPP), a case that involved the identical sting operation as this case; indeed the proposed robbery was to take place at the same McDonalds as in this case. As indicated in the government's sentencing submissions in *Brant* the defendants were also found to be in possession of weapons. Moreover, of the five defendants, two defendants (Brant and Smith) were determined to

be career offenders.  Nevertheless, Brant the lead defendant was sentenced to 92 months and Smith who according to the government in that case faced a sentencing range of 151-188 -- the same range advocated by the government here -- was sentenced to 60 months. Based on the foregoing, a sentence of time-served would avoid unwarranted sentencing disparities among similarly situated defendants.

## CONCLUSION

For the foregoing reason, a sentence of time-served is "sufficient," to accomplish all of the purposes contained in 18 U.S.C. §3553(a).

Dated: New York, New York
        June 22, 2020

                                        Respectfully submitted,

                                        NEWMAN & GREENBERG LLP

                                        by _____/s/_____
                                            Steven Y. Yurowitz

                                        950 Third Avenue
                                        New York, New York 10022
                                        (212) 308-7900
                                        *Attorneys for Defendant*
                                        *Damon Chappelle*